Stephen C. Smith, ISB No. 7336
Nicholas A. Smith, ISB No. 8400
HAWLEY TROXELL ENNIS & HAWLEY LLP
877 Main Street, Suite 1000
P.O. Box 1617
Boise, ID 83701-1617
Telephone:  208.344.6000
Facsimile:  208.954.5268
Email:  scsmith@hawleytroxell.com
    nsmith@hawleytroxell.com

Attorneys for Plaintiffs

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| CLARENCE and HELEN ANN CHAPMAN; JERRY and SUSAN ROSS ALLEY; TIMOTHY CRAIG; MELVIN and MARGARET L. GILL; ALLEN MICHAEL MAY and BETTY MAY<br><br>  Plaintiffs<br><br>vs.<br><br>UNITED STATES OF AMERICA | Case No. 12-183 L<br><br>PLAINTIFFS' RESPONSE TO THE UNITED STATES' MOTION TO DISMISS |

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ................................................................................................................ 1

II. FACTS ................................................................................................................................ 2

III. ARGUMENT ..................................................................................................................... 2

    A.    Standard of Review ................................................................................................. 2

    B.    Takings .................................................................................................................... 3

        1.    *The destruction of the timber was not just incidental to government action, but was in fact the intended act.* ............................ 4

        2.    *The Government permanently deprived Plaintiffs of their timber and other personal property.* ....................................................... 8

    C.    Police Powers are limited, and the Government's actions here exceeded any reasonable bounds. ................................................................ 9

    D.    Plaintiffs' Complaint states a takings claim, not a claim for relief in tort. ..................................................................................................................... 12

IV. CONCLUSION ................................................................................................................ 13

## TABLE OF AUTHORITIES

**Cases**

*Amerisource Corp. v. United States*,
   525 F.3d 1149 (Fed. Cir. 2008) .................................................................................. 11

*Baird v. United States,*
   5 Cl. Ct. 324 (Ct. 1984) ................................................................................... 6, 7, 8

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ........................................................................................... 3

*Bowditch v. Boston,*
   101 U.S. 16 (1880) ............................................................................................. 10

*Boyle v. United States*,
   200 F.3d 1369 (FED. CIR. 2000) ........................................................................ 2

*Cary v. United States,*
   5552 F.3d 1373 (Fed Cir. 2009) ................................................................. 3, 4, 5

*City of Monterey v. Del Monte Dunes at Monterey, Ltd.*,
   526 U.S. 687 (1999) ........................................................................................... 12

*Columbia Basin Orchard v. United States,*
   132 F.Supp. 707 (Ct. Cl. 1955) ....................................................................... 3, 7

*Del-Rio Drilling Programs, Inc. v. United States*,
   146 F.3d 1358 (Fed. Cir. 1998) ........................................................................ 13

*El-Shifa Pharm. Indus. Co. v. United States*,
   378 F.3d 1346 (FED. CIR. 2004) ....................................................................... 13

*Florida Rock Indus. v. United States,*
   18 F.3d 1560 (Fed. Cir. 1994) .......................................................................... 11

*Hartwig v. United States,*
   485 F.2d 615 (Ct. Cl. 1973) ............................................................................... 8

*Lucas v. S.C. Coastal Council,*
   505 U.S. 1003 (1992) ........................................................................................ 11

*Moden v. United States*,
   404 F.3d 1335 (Fed. Cir. 2005) ........................................................................ 12

45266.0001.2552871.3

*Nicholson v. United States*,
  77 FED. CL. 605 (2007) ................................................................................................ 2, 8, 13

*Nollan v. Cal. Coastal Com*,
  483 U.S. 825 (1987) ............................................................................................................ 10

*Pennsylvania Coal Co. v. Mahon*,
  260 U.S. 393 (1922) ..................................................................................................... 10, 11

*Poorbaugh v. United States,*
  27 FED. CL. 628 (Ct. Cl. 1993) ............................................................................................ 6

*Ridge Line Inc. v. United States,*
  346 F.3d 1346 (Fed. Cir. 2003) .................................................................................... passim

*Rith Energy, Inc. v. United States*,
  247 F.3d 1355 (Fed. Cir. 2001) ........................................................................................... 13

*Scrase v. United States*,
  No. 12-056C, 2012 U.S. Claims LEXIS 474, at *5-6 (Fed. Cl. May 10, 2012) ..................... 3

*Sufi Network Servs. V. United States*,
  102 FED. CL. 656 (FED. CL. 2012) ....................................................................................... 2

*Teegarden v. United States*,
  42 Fed. Cl. 252 (1998) ..................................................................................................... 7, 9

*Turner v. United States*,
  901 F.2d 1093 (Fed. Cir. 1990) ............................................................................................ 5

**Other Authorities**

United States Constitution ........................................................................................................ 11

United States Constitution, Amendment V ................................................................................. 3

Plaintiffs, by their attorneys, Hawley Troxell Ennis & Hawley LLP, respectfully submit this Brief in response to the United States' Motion to Dismiss, filed with the Court on May 21, 2012 (the "Motion"). The Government's Motion essentially asks this Court to grant the Government complete takings immunity for any fire the Government sets, no matter how large. No other court has seen fit to grant such sweeping immunity to the Government, and it would be inappropriate to do so based on the facts and circumstances of this case. Under the familiar *Ridgeline* analysis, Plaintiffs have stated a claim for relief, and the Government's Motion should be denied.

## I.
## INTRODUCTION

The Government's Motion should be denied. In their Complaint, Plaintiffs allege that the Government intended to take Plaintiffs' property, or at least knew or should have known that its actions would result in the destruction of Plaintiffs' property. Plaintiffs also allege that the Government took Plaintiffs' property for its own purposes, and has permanently deprived Plaintiffs of any beneficial use of that property. Together, these allegations state a claim for relief under the Fifth Amendment and familiar *Ridge Line* standard. *See Ridge Line Inc. v. United States,* 346 F.3d 1346 (Fed. Cir. 2003)

The present case is distinguishable from the flood and fire cases cited by the Government because here, the direct and intended effect of the Government's action was the destruction of Plaintiffs' timber and other personal property. Moreover, the flood and fire cases that required frequent and recurring government invasions before finding a taking considered whether the Government had taken *real property*, not personal property. Here, Plaintiffs have alleged that the Government permanently took Plaintiffs' timber—the fact that the Government effected that taking by lighting only one fire does not make the taking any less permanent or compensable.

PLAINTIFFS' RESPONSE TO UNITED STATES' MOTION TO DISMISS - 1

Neither may the Government succeed on its Motion to Dismiss simply by saying it was exercising its police powers. Takings jurisprudence assumes the Government was exercising its police powers—the question is whether authorized governmental actions rise to the level of a taking. The latter inquiry is fact specific and should not be decided under these circumstances on a motion to dismiss. *Cf. Nicholson v. United States*, 77 FED. CL. 605, 615 (2007) ("Due to the often factually intensive nature of the claims, takings jurisprudence warns against precipitous grants of summary judgment. Therefore, rather than limiting our consideration to the pleadings filed in this matter, we adopt the more cautious approach of examining the evidence in support of the Rule 56 motions.") (citations and internal quotation marks omitted). In the interests of justice and as a matter of law, the Government's Motion to Dismiss should be denied.

## II.
## FACTS

For purposes of the Government's Motion, the facts are those alleged in the Complaint. The Government has accepted Plaintiffs' allegations as true for purposes of its Motion, as it must. For brevity's sake, Plaintiffs refer the Court to their Complaint for a recitation of the facts.

## III.
## ARGUMENT

A.  **Standard of Review**

When reviewing the Government's Motion to Dismiss, the Court accepts the Plaintiffs' "well-pleaded factual allegations as true and draw all reasonable inferences" in Plaintiffs' favor. *Sufi Network Servs. V. United States*, 102 Fed. Cl. 656, 660 (FED. CL. 2012) (quoting *Boyle v. United States*, 200 F.3d 1369, 1372 (Fed. Cir. 2000)). "To survive a motion to dismiss, a plaintiff need show only 'enough facts to state a claim to relief that is plausible on its face.'" *Scrase v.*

*United States*, No. 12-056C, 2012 U.S. Claims LEXIS 474, at *5-6 (Fed. Cl. May 10, 2012) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (quoting *Twombly*, 550 U.S. at 556)).

**B.      Takings**

The Fifth Amendment requires the Government to pay just compensation for private property it takes for a public purpose. U.S. Const., Amendment V. In the context of inverse condemnation claims, the court considers the two-part analysis summarized in *Ridge Line v. United States*, 346 F.3d 1346. The two prongs have been referred to, respectively, as the causation and appropriation prongs. *See Cary v. United States,* 5552 F.3d 1373, 1376-77 (Fed Cir. 2009). First, the Court considers whether the government intended to invade a protected property interest, or whether the invasion "is the direct, natural, or probable result of an authorized activity and not the incidental or consequential injury inflicted by the activity." *Ridge Line,* 346 F.3d at 1355 *(*quoting *Columbia Basin Orchard v. United States,* 132 F. Supp. 707, 709 (Ct. Cl. 1955)). Second, the Court considers whether the Government appropriated "a benefit to the government at the expense of the property owner, or at least preempt[ed] the owner's right to enjoy his property for an extended period of time, rather than merely inflict an injury that reduces its value." *Id.* at 1356*.*

The Government conceded that the Plaintiffs' Complaint satisfies the first prong of the Ridgeline analysis—that is, the Complaint alleges that the Government's invasion of the Plaintiffs' property interests was either intentional or the direct and probable result of the Government's authorized activity. (*See* Memo in Support of Motion to Dismiss, p. 6.) Plaintiffs

therefore address only the Government's arguments regarding the second prong of the *Ridge Line* test.

The second prong of the *Ridge Line* test is satisfied because the Plaintiffs have sufficiently pled that the Government appropriated Plaintiffs' property for its own benefit, or at the very least preempted Plaintiffs from enjoying their right to their property for an extended period of time. *See Cary,* 552 F.3d at 1380 (quoting *Ridge Line,* 345 F.3d at 1356). Plaintiffs are willing to concede that the Government did not take their real property, notwithstanding that the Government lit a back fire that burned out substantial portions of the Plaintiffs' real property, including outbuildings and threatening their homes. Instead, Plaintiffs have pled that the Government took certain other property belonging to Plaintiffs, including timber. The Complaint states a claim for relief for the Government's taking of this property, and the Government's Motion should therefore be denied.

1.    *The destruction of the timber was not just incidental to government action, but was in fact the intended act.*

As alleged in the Complaint, the Government lit the fire that burned Plaintiffs' timber in an effort to halt the spread of the wildfire. A backfire is effective, if at all, when it consumes fuel that otherwise would feed the wildfire. The Government's purpose in lighting the backfire, then, was to consume—that is, take—Plaintiffs' timber for the Government's own purpose of halting the progress of the wildfire. The taking of Plaintiffs' timber was the direct and intended result of the Government's authorized activities.

For that reason, Plaintiffs' Complaint is distinguishable from the cases cited in support of the Government's argument that because this was a one-time fire, there could not be a taking. The cases cited by the Government are discussing the circumstances under which a fire set or

caused by the Government can be considered to have taken *real property*. *See, e.g.*, *Turner v. United States*, 901 F.2d 1093, 1095 (Fed. Cir. 1990). Courts have required plaintiffs to show that the flooding was either permanent or recurred so frequently that it could be fairly said that the Government had permanently occupied the land. *Id*. That rule, as more fully developed in the context of inverse condemnation cases involving flood, makes sense when the property at issue is real property, because a one-time flood or fire does not permanently deprive the landowner of the beneficial use of that land. But, as noted above, Plaintiffs are not arguing that the Government permanently occupied their real property; instead, Plaintiffs fairly allege in their Complaint the fire set by the Government *permanently* took Plaintiffs' timber and other irreplaceable personal property. Because of the Government's actions, Plaintiffs have been permanently deprived of the beneficial use of their timber. Whether Plaintiffs' real property will be the subject of frequent and recurring fires simply has no bearing on whether the Government permanently took Plaintiffs' timber.

Neither is the present case controlled by *Cary*. In *Cary*, the question before the Court was whether a one-time fire constituted a taking of the plaintiffs' real property, not timber. The court held that it did not because there was no evidence that the fire prevented plaintiffs from reoccupying their property. *Cary*, 552 F.3d at 1380, 1381. Plaintiffs do not argue that the Government took their real property, so *Cary*'s reference to the plaintiffs' ability to rebuild "infrastructure" to reoccupy their property there is irrelevant to Plaintiffs' claims in this case. Further, no amount of "rebuilding of infrastructure" will enable to Plaintiffs to regain the beneficial use of the timber that the Government took from them. The Government's interference with Plaintiffs' ownership rights in the timber "was substantial . . . enough to rise to the level of a taking." *Id. at* 1380-81. It is both an economic and scientific reality that Plaintiffs

PLAINTIFFS' RESPONSE TO UNITED STATES' MOTION TO DISMISS - 5

will not be able to enjoy the beneficial use of their timber during their lifetimes. Plaintiffs should therefore be compensated for the Government's permanent taking of their timber.

As alleged in the Complaint, the target of the Government's back fire was Plaintiffs' timber. Thus, the destruction of Plaintiffs' timber cannot be properly characterized as a mere tortious invasion or conversion. The court's holding in *Poorbaugh v. United States,* 27 Fed. Cl. 628 (Ct. Cl. 1993), does not compel a different conclusion. There, the parties' principle dispute was whether the Government had taken a portion of the plaintiffs' land by building a fence that the government believed to be on the boundary between federal and private land, but which plaintiffs argued encroached on their property by 25 feet. *Id.* at 632. The government cut down live trees on the plaintiffs' property in order to build the fence. *Id.* As noted by the Government, the court in Poorbaugh focused on the fact that the government had not asserted a property interest in the plaintiffs' trees. *Id.* at 633. Instead, the government's removal of the trees there was incidental to the government's authorized activity, which was the building of the fence. *Id.* at 633-34. Because of this, and the fact that the court concluded the government had not taken the underlying real property, the court found that the plaintiffs could not separately maintain a takings claim for the trees. *Id*.

This case is fundamentally different from the plaintiffs' claim in *Poorbaugh*. Here, the destruction of Plaintiffs' timber was not incidental to or a mere consequence of the Government's authorized activities—the destruction of Plaintiff's timber *was* the Government's authorized activity. For that same reason, the cases relied on by *Poorbaugh* are also distinguishable from this case. The plaintiffs in *Baird v. United States,* 5 Cl. Ct. 324 (1984) claimed that the government had taken a flowage easement over their property, and that the flowage easement caused damaged to plaintiffs' fruit trees and other crops. *Id.* at 328-31. But

PLAINTIFFS' RESPONSE TO UNITED STATES' MOTION TO DISMISS - 6

the flooding in *Baird* had occurred only once, and was unlikely to happen again. *Id.* at 329. Therefore, the court concluded that the government was not liable for taking the plaintiffs' real property. *Id.* The court went on to find that the plaintiffs were not entitled to compensation for the damage done to their trees because it was unreasonable to infer from the facts and circumstances of that case that the government intended to take the trees that were damaged; the flooding in *Baird* was caused by "a unique occurrence that grew out of unusual climatic conditions." *Id.* at 330. As conceded by the Government, Plaintiffs' Complaint clearly alleges an intent on the part the Government to take Plaintiffs' timber for its own purpose. This case cannot be dismissed, then, on the grounds that the fire that destroyed Plaintiffs' timber was caused by a unique, climatic event. *Cf. Teegarden v. United States*, 42 Fed. Cl. 252, 257 (1998).

The *Baird* court's seemingly sweeping observation that in flooding cases, *crop* damage was not compensable unless and until the government had taken an interest in the land, such as a flowage easement, is also not dispositive of this case. *Baird,* 5 Cl. Ct. at 330. First, a fire that is set with the specific intent of taking timber is different from the government acquiring a flowage easement over real property that eventually and only incidentally destroys or damages fruit trees or crops. *Cf. Columbia Basin Orchard v. United States,* 132 Ct. Cl. 445 (1955) (a combination of heavy rain fall and government work on a dam caused nearby lake water to overflow into a spring, which increased the alkalinity and salinity of the spring water used by plaintiffs to water their fruit trees, which contaminated water eventually damaged the fruit trees). It is fair to require the taking of the underlying real property before rewarding damages to crops because the damage to the crops is only incidental to the government's taking: it is difficult to infer that the government in *Baird* and similar cases had an intent to take the crops. Instead, the courts determine whether it is fair to impute to the government the intent to take the real property or an

PLAINTIFFS' RESPONSE TO UNITED STATES' MOTION TO DISMISS - 7

interest in the real property, and then compensate the plaintiffs for any ancillary damages they incurred once the court has determined the government took the real property. *See Barnes v. United States,* 538 F.2d 865, 874-75 (Ct. Cl. 1976). But when the government's direct intent is to take the trees or crops, the court does not need to make the same inferential leap, and the "rule" requiring a taking of the underlying real property simply does not make sense. Further, unlike fruit trees and crops, the timber that was taken by the Government here cannot simply be replanted and harvested the next season, or even in a few seasons. The reality is that Plaintiffs will not be able to sow new timber and reap the benefits of that timber in their lifetimes. The Government took Plaintiffs' timber and should be required to compensate them for that taking.

  2. *The Government permanently deprived Plaintiffs of their timber and other personal property.*

  To be sure, the Government's taking of Plaintiffs' timber is permanent. Plaintiffs' complaint is not that the Government took their land, but that the Government took their timber. As noted above, Plaintiffs are willing to concede that the Government did not take their real property, notwithstanding the substantial and relatively permanent damage the Government's backfire inflicted on Plaintiffs' land. The court in *Hartwig v. United States,* 485 F.2d 615 (Ct. Cl. 1973) dealt with a situation where the substantial and permanent damage to *real property* had been caused by a one-time flood. Resting its decision principally on the fact that there was no evidence the real property there would ever be flooded again, the court concluded that "the plaintiffs have at best presented a case of consequential injury due to governmental action, which would be an essentially tortious injury." *Id.* at 620. But the taking of Plaintiffs' timber was not consequential injury due to governmental action, but was the direct and intended result of that action. *See Nicholson*, 77 Fed. Cl. at 621-22 ("The key to distinguishing a taking from an

incidental injury is the presence on the part of the Government of an intent to appropriate.") (internal quotation marks omitted).  In that regard, this case is completely different from *Teegarden,* where the plaintiffs failed to "identify any action of the Forest Service that directly, indirectly, or incidentally imposed upon the integrity or value of plaintiffs' land … ."  42 Fed. Cl. at 257, n.4.  Plaintiffs here have alleged that the Forest Service "physically appropriate[d] … property of plaintiffs to protect government or privately held lands … ."  *Id.* The Complaint alleges that the Government intended to, and did, permanently destroy Plaintiffs' timber for its own purposes.  Plaintiffs submit that it would be no different than if the Government had walked onto Plaintiffs' property, clear cut the timber, and built a new regional headquarters out of the wood.  The Government took Plaintiffs' timber for its own purposes and should have to pay for that taking.

Viewing the allegations in the Complaint in the light most favorable to Plaintiffs, Plaintiffs have adequately alleged that the Government intended to take Plaintiffs' timber, or that the taking of the timber was the direct and probable consequence of the Government's action (this is prong one of *Ridge Line* and conceded by the Government).  Plaintiffs have also adequately alleged that the Government acquired an interest in Plaintiffs' property when it took the timber and used it for its own purposes, or at the very least deprived Plaintiffs' of the beneficial use of that timber (this is the acquisition prong of *Ridge Line*).  Plaintiffs need not show that there will ever be another fire on their property as a result of government action because the backfire lit by the Government permanently took Plaintiffs' timber.

C. **Police Powers are limited, and the Government's actions here exceeded any reasonable bounds.**

The Government's Motion appears to argue that even if its actions took Plaintiffs' property for its own purposes, doing so was a valid exercise of its police powers and it therefore

PLAINTIFFS' RESPONSE TO UNITED STATES' MOTION TO DISMISS - 9

45266.0001.2552871.3

owes no compensation to Plaintiffs. The Government relies on a single case, *Bowditch v. Boston,* 101 U.S. 16 (1880), for the proposition that the government may destroy real or personal property to prevent the spread of fire.[1] Plaintiffs agree that the Forest Service must have some police powers to combat wildfires, and that authorized activities within the scope of those powers should be exempt from takings liability. But identifying that the Government has some police powers to combat wildfires is simply the beginning of the takings inquiry. *See Nollan v. Cal. Coastal Comm*, 483 U.S. 825, 853, (1987) ("The fact that the Commission's action is a legitimate exercise of the police power does not, of course, insulate it from a takings challenge, for when 'regulation goes too far it will be recognized as a taking.'" (quoting *Pennsylvania Coal Co. v. Mahon*, 260 U.S. 393, 415 (1922)); *Pennsylvania Coal*, 260 U.S. at 413 ("When [the extent of the diminution from government action] reaches a certain magnitude, in most if not in all cases there must be an exercise of eminent domain and compensation to sustain the act.").

---

[1] The question in *Bowditch* was whether the plaintiff qualified for compensation under a Boston city ordinance for the destruction of his house by the Boston fire department. The ordinance provided for compensation if three engineers decided the destruction of the house was necessary. The court decided the case in *Bowditch* entirely under state law: the controversy was "wholly beyond the sphere of Federal authority." *Id.* at 19. The court cited the common law principle that allowed "every one …to destroy real and personal property, in cases of actual necessity, to prevent the spreading of a fire, and there was no responsibility on the part of such destroyer, and no remedy for the owner." *Id.* at 18. It is this quotation that the Government seizes upon to support its position that lighting a backfire is a valid exercise of police powers. Although *Bowditch* references only the common law doctrine—which was not limited to government back fires, but presumably would have permitted anyone, including Plaintiffs, to light backfires to fight the Poe Cabin fire—Plaintiffs do not disagree with the general proposition that lighting a backfire may be a valid exercise of the Government's police powers. But that power is limited. At common law, the firefighting efforts had to stem from cases of actual necessity, and presumably had to be a reasonable response to the threat. Likewise, the Government's exercise of police powers in fighting fires is limited at the very least by these same constraints. *See Pennsylvania Coal*, 260 U.S. at 415-16 (questioning how far the doctrine in *Bowditch* could be extended, and whether that

On the facts of this case as alleged by Plaintiffs, the Government's attempt to hide behind the shield of its police powers ignores that the Government's police powers are limited in scope and degree. *Amerisource Corp. v. United States*, 525 F.3d 1149, 1154 (Fed. Cir. 2008) ("As expansive as the police power may be, it is not without limit."). Determining whether government action results in a compensable taking requires "a classic exercise of judicial balancing of competing values." *Florida Rock Indus. v. United States,* 18 F.3d 1560, 1570 (Fed. Cir. 1994). Unless this Court intends to grant the Forest Service complete takings immunity for any fire it sets, regardless of the magnitude or foreseeability of the damage that results from that fire, the Government cannot make this case go away simply by saying it was acting pursuant to its police powers. *Id.* at 1571 (explaining that the Government cannot rely simply on a recitation of some legitimate state interest, lest the limitations on the government's police powers be rendered meaningless); *see also Lucas v. S.C. Coastal Council,* 505 U.S. 1003, 1026 (1992) ("*A fortiori* the legislature's recitation of a noxious-use justification cannot be the basis for departing from our categorical rule that total regulatory takings must be compensated. If it were, departure would virtually always be allowed."); *Pennsylvania Coal*, 260 U.S. at 415 ("When this seemingly absolute protection is found to be qualified by the police power, the natural tendency of human nature is to extend the qualification more and more until at last private property disappears. But that cannot be accomplished in this way under the Constitution of the United States.").

Plaintiffs have alleged that the Government lit a backfire that burned almost 60,000 acres, and that the Government knew or should have known when they lit the fire what would transpire.

---

doctrine was rooted in tradition more than in principle: "In general it is not plain that a man's misfortunes or necessities will justify his shifting the damages to his neighbor's shoulders.").

PLAINTIFFS' RESPONSE TO UNITED STATES' MOTION TO DISMISS - 11

Plaintiffs submit that, whatever authority the Government had to light a backfire to fight the Poe Cabin wildfire, it did not have the authority to light a fire of this magnitude: the Government simply took too much.  Based on these alleged facts, this Court need not decide precisely where the line is between a non-compensable backfire and a government-lit fire that leads to takings liability, because Plaintiffs submit that the Government's action here were so far beyond the outer bounds of its police powers that Plaintiffs' Complaint states a claim for relief.  At the very least, Plaintiffs have stated a plausible claim for relief that should survive the Government's Motion to Dismiss.

Allowing Plaintiffs' Complaint to stand will not open the Government to a flood of fire takings litigation, unless the Government often lights backfires that it knows will burn tens of thousands of acres.  Nor does allowing Plaintiffs' Complaint stand to alter the line that this Court has drawn between torts and takings.  Plaintiffs have sufficiently pled that the Government's back fire took their property, and that in doing so the Government exceeded whatever police powers it had.  The Government's Motion should be denied.

**D.      Plaintiffs' Complaint states a takings claim, not a claim for relief in tort.**

As discussed fully above, Plaintiffs adequately allege a takings claim under the Fifth Amendment and *Ridge Line*.  The purpose of the *Ridge Line* test, at least in part, is to distinguish between takings and torts.  It follows, then, that if Plaintiffs satisfy *Ridge Line*, this Court has jurisdiction to hear their takings claim.  The inclusion of language in Plaintiffs' Complaint that the Government believes sounds in tort does not undermine Plaintiffs' otherwise well-pleaded takings claim.  The Federal Circuit has held that "the same operative facts may give rise to both a taking and a tort."  *Moden v. United States*, 404 F.3d 1335, 1339 n.1 (Fed. Cir. 2005) (citing *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 717 (1999); *El-Shifa Pharm.*

*Indus. Co. v. United States*, 378 F.3d 1346, 1353 (FED. CIR. 2004); *Rith Energy, Inc. v. United States*, 247 F.3d 1355, 1365 (Fed. Cir. 2001); *Del-Rio Drilling Programs, Inc. v. United States*, 146 F.3d 1358, 1363 (Fed. Cir. 1998)); *see also Nicholson v. United States*, 77 FED. CL. 605, 615 (2007) ("Despite the familiar ring of tort in Plaintiffs' pleadings, we are also well aware that taking claims often contain elements of tort law."). Here, "[w]hether the government's actions separately give rise to a tort action is irrelevant to [this Court's] disposition of this case." *Id.* Plaintiffs have stated a plausible takings claim, and this Court has jurisdiction to hear the case.

## IV.
## CONCLUSION

Plaintiffs request that the Government's Motion to Dismiss be denied.

DATED THIS 21st day of June, 2012.

          HAWLEY TROXELL ENNIS & HAWLEY LLP


          By /s/ Stephen C. Smith
            Stephen C. Smith, ISB No. 7336
            Attorneys for Plaintiffs

CERTIFICATE OF SERVICE

  I HEREBY CERTIFY that on this 21st day of June, 2012, I electronically filed the foregoing PLAINTIFFS' RESPONSE TO UNITED STATES' MOTION TO DISMISS with the Clerk of the Court using the CM/ECF system which sent a Notice of Electronic Filing to the following persons:

Terry M. Petrie         Terry.Petrie @usdoj.gov
U.S. Department of Justice
Environment and Natural Resources Division
Natural Resources Section
999 18th Street
South Terrace
Suite 370
Denver, Colorado   80202
[Counsel For Defendant]


  AND, I HEREBY CERTIFY that I have served the foregoing document to the following non-CM/ECF Registered Participants (list names and addresses):

           ____ U.S. Mail, Postage Prepaid
           ____ Hand Delivered
           ____ Overnight Mail
           ____ E-mail
           ____ Telecopy


          /s/  Stephen C. Smith