# In the United States Court of Federal Claims

No. 12-183L
(Filed October 2, 2012)

| | |
|---|---|
| * * * * * * * * * * * * * * * * * * * * * * <br><br>**CLARENCE and HELEN ANN CHAPMAN, JERRY and SUSAN ROSS ALLEY, TIMOTHY CRAIG, MELVIN and MARGARET L. GILL, ALLEN M. and BETTY MAY,**<br><br>                Plaintiffs,<br><br>      v.<br><br>**THE UNITED STATES,**<br><br>                Defendant.<br><br>* * * * * * * * * * * * * * * * * * * * * * | *<br>*<br>* Takings; Tucker Act, 28 U.S.C.<br>* § 1491(a) (2006); wildfire<br>* control; destruction of timber;<br>* destruction of personal property;<br>* RCFC 12(b)(6) motion to<br>* dismiss for failure to state a<br>* claim; whether fact-intensive<br>* nature of takings jurisprudence<br>* counsels against a rule that<br>* insulates from a takings claim<br>* governmental activity to stop the<br>* spread of a wildfire that destroys<br>* property.<br>*<br>* |

      Stephen C. Smith, Boise, ID, for plaintiff. Nicholas A. Smith, Hawley Troxell Ennis & Hawley LLP, of counsel.

      Terry M. Petrie, Washington, DC, with whom was Assistant Attorney General Ignacia S. Morena, for defendant.

## MEMORANDUM OPINION AND ORDER

**MILLER**, Judge.

      This case is before the court on defendant's motion to dismiss pursuant to RCFC 12(b)(6), for failure to state a claim upon which relief can be granted. The issue for decision is whether the United States Government has taken property within the contemplation of the Fifth Amendment to the U.S. Constitution when it destroys privately-owned timber and

other personal property on a single occasion through the lighting of backfires as part of wildfire containment efforts. 1/

## FACTS

A court considering a motion to dismiss under RCFC 12(b)(6) must accept as true all factual allegations in the complaint, and must draw all reasonable inferences in the plaintiff's favor. Sommers Oil Co. v. United States, 241 F.3d 1375, 1378 (Fed. Cir. 2001) (citations omitted). Defendant has agreed to plaintiffs' statement of facts contained in their Complaint filed on March 20, 2012, for the purposes of this motion, see Def.'s Br. filed May 21, 2012, at 1 n.2, and for purposes of ruling on defendant's motion, the court adopts the following operative facts.

On July 18, 2007, a lightning strike ignited a wildfire (the "Poe Cabin fire") in the Hells Canyon National Recreation Area (the "HCNRA"). Compl. filed Mar. 20, 2012, ¶¶ 11-12. Over a period of six weeks, the Poe Cabin fire burned in the HCNRA in the Nez Perce National Forest and on Bureau of Land Management land, land owned by the State of Idaho, and private land. Id. ¶ 11. As part of efforts to fight the Poe Cabin fire, a crew of the United States Forest Service (the "Forest Service") started a backfire on July 19, 2007. Id. ¶ 12.

Clarence and Helen Ann Chapman, Jerry and Susan Ross Alley, Timothy Craig, Melvin and Margaret L. Gill, and Allen M. and Betty May (collectively "plaintiffs") own various parcels of real property and private property located in an unincorporated area of Idaho County, Idaho, known as "Deer Creek." Id. ¶¶ 3-9. The backfire set by the Forest Service, "eventually consumed" personal property of plaintiffs situated on those parcels. Id. ¶¶ 37, 44, 51, 59, 66, 76. With respect to the Chapmans, the backfire consumed their timber, thereby depriving them of "the use, value, and enjoyment of their timber and its environmental attributes." Id. ¶¶ 37, 40. With respect to the Alleys, the backfire consumed their timber and property, thereby depriving them of "the use and enjoyment of their timber." Id. ¶¶ 44, 47. With respect to Mr. Craig, the backfire consumed his timber and property, including several buildings, thereby depriving him of "the use and enjoyment of his timber and property." Id. ¶¶ 31, 51, 54. With respect to the Gills' personal property, the backfire consumed their cattle and property, thereby depriving them of "the use and enjoyment of

---

1/ Although plaintiffs requested oral argument on this motion, defendant responded that oral argument is unnecessary. See Pls.' Mot. filed Aug. 31, 2012; Def.'s Br. filed Aug. 31, 2012. The court concurs with defendant that the issues before the court have been briefed fully and that oral argument would not aid the decisionmaking process.

2

their cattle and property." Id. ¶¶ 14, 59, 62.  With respect to the Mays, the backfire consumed their timber and property, thereby depriving them of "the use and enjoyment of their timber and property."  Id. ¶¶ 66, 69.  The backfire also consumed timber owned by non-party Debra Rogers May, thereby depriving her of "the use and enjoyment of her timber and its environmental attributes."  Id. ¶¶ 76, 79.  Ms. May assigned her claim against the Government for that loss to Mr. Chapman.  Id. ¶ 74.

The burning of plaintiffs' properties was the "direct, natural or probable result of [d]efendant's authorized act[,]" and defendant "knew or should have known that the [backfire], *as designed*, would consume" plaintiffs' properties.  Id. ¶¶ 38, 45, 52, 60, 67, 77.  The backfire was intended to control the spread of the Poe Cabin fire.  Id. ¶¶ 39, 46, 53, 61, 68, 78.

In lieu of an answer to the complaint, defendant on May 21, 2012, moved to dismiss pursuant to RCFC 12(b)(6).  Briefing, including plaintiffs' sur-reply, was completed on August 13, 2012.

## DISCUSSION

To survive a motion to dismiss pursuant to RCFC 12(b)(6), "the complaint must allege facts 'plausibly suggesting (not merely consistent with)' a showing of entitlement to relief."  Cary v. United States, 552 F.3d 1373, 1376 (Fed. Cir. 2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 557 (2007)).  The complaint need not "set out in detail the facts upon which the claim is based, but enough facts to state a claim to relief that is plausible on its face."  Cary, 552 F.3d at 1376.  Plaintiffs have conceded that their claims are not based upon any taking of plaintiffs' real property; rather, defendant's permanent taking of "certain other property belonging to Plaintiffs, including timber," forms the basis for this complaint.  See Pls.' Br. filed June 21, 2012, at 5, 8.  The court therefore examines the complaint to determine whether it states a claim for the taking of plaintiffs' timber and other personal property.

The parties agree that the opinion of the United States Court of Appeals for the Federal Circuit in Ridge Line, Inc. v. United States, 346 F.3d 1346 (Fed. Cir. 2003), provides the standard for stating a takings claim.  See Pls.' Br. filed June 21, 2012, at 3; Def.'s Br. filed May 21, 2012, at 5-6.  Ridge Line sets forth a two-prong test:

> First, a property loss compensable as a taking only results when the government intends to invade a protected property interest or the asserted invasion is the direct, natural, or probable result of an authorized activity and not the incidental or consequential injury inflicted by the action.

> . . . .
>
> . . . Second, the nature and magnitude of the government action must be considered. Even where the effects of the government action are predictable, to constitute a taking, an invasion must appropriate a benefit to the government at the expense of the property owner, or at least preempt the owner[']s right to enjoy his property for an extended period of time, rather than merely inflict an injury that reduces its value.

346 F.3d at 1355-56 (internal quotation marks and citations omitted). For purposes of this motion, defendant concedes that the complaint satisfies the first Ridge Line prong. See Def.'s Br. filed May 21, 2012, at 6. Consequently, the question becomes whether the pleaded facts show that the Government has appropriated a benefit to itself at the expense of plaintiffs or at least has preempted plaintiffs' right to enjoyment of their property for an extended time.

Defendant urges that there has been no appropriation of plaintiffs' property, citing specifically Cary, 552 F.3d 1373, and Hartwig v. United States, 485 F.2d 615 (Ct. Cl. 1973). Def.'s Br. filed May 21, 2012, at 6-10. A number of landowners in Cary predicated a taking claim on a single wildfire that allegedly was caused by the Government's policies of suppressing wildfires, which, the landowners alleged, permitted the buildup of underbrush and the impact of human visitors for recreational purposes, which further led to the ignition of the wildfire by a lost hunter's signal fire. 552 F.3d at 1375-77. The Federal Circuit held that the landowners had not satisfied the appropriation prong of Ridge Line. Id. at 1380. In contrast to cases involving takings by flooding, such as Ridge Line, the court identified no incursion into the landowners' property that would have constituted the acquisition of an easement by the Government or that would have "prevent[ed] the rebuilding of infrastructure that would allow the landowners to reoccupy their property." Id. Nor had the landowners alleged that the fire would "intermittently but inevitably recur." Id. at 1381. Thus, the court concluded, the landowners had not established that the Government's "preemption [was] sufficiently permanent[,]" such that the Government had "exercised dominion" over their properties. Id.

Hartwig involved the flooding of land that the landowners alleged caused permanent damage by erosion, sand and silt deposits, and the destruction of fences and other improvements. 485 F.2d at 616-17. The landowners argued that the flood was caused by the Government's operation of dams. Id. at 617. Because the landowners did not allege that a flood of the same type inevitably would recur, the United States Court of Claims held that the Government's actions did not constitute a taking. Id. at 620. The court further held that, even if it accepted as true the allegation that the Government, by operation of the dams, had

4

caused the flood to be worse that it otherwise would have been, such action did not establish "a continuing condition that will inevitably lead to future floods which would not otherwise occur." Id. The court therefore concluded that the landowners had not stated a takings claim. Id.

Defendant suggests that Cary and Hartwig establish the proposition that a one-time infliction of physical damage to property does not constitute a taking. Def.'s Br. filed May 21, 2012, at 10. As the claims at issue here involve the destruction of property caused by a single fire, defendant argues that the Forest Service's actions cannot constitute a taking, and plaintiffs' claims are actually in the nature of tortious claims not cognizable in the Court of Federal Claims. Id. Plaintiffs seek to distinguish Cary, noting that the question in that case was whether a fire effected a taking of real property, drawing particular attention to the Federal Circuit's ruling that the fire did not prevent the landowners from reoccupying their real property or rebuilding infrastructure on it. Pls.' Br. filed June 21, 2012, at 5. In contrast, plaintiffs in the case at bar seek compensation for the taking of timber and other personal property, not their real property. Id. Plaintiffs also draw the same distinction between this case and Hartwig, while further advocating that the injuries alleged in Hartwig were consequential to government action, whereas the damages alleged here were "the direct and intended result" of the Government's action in lighting backfires. Id. at 8.

The court agrees with plaintiffs that Cary and Hartwig do not provide perfect guidance because they were predicated on the property owners' ability to reoccupy and use real property, not destruction of personal property. Rules of law involving repeated incursions are of somewhat limited utility in this case, as a single event is alleged to have destroyed the property at issue. Plaintiffs' further differentiation of Hartwig with regard to consequential, rather than direct and intended, results is moot, however, as that distinction goes to the first Ridge Line prong. See 346 F.3d at 1355 (taking arises only where government invasion is not "incidental or consequential injury" (quoting Columbia Basin Orchard v. United States, 132 F. Supp. 707, 709 (Ct. Cl. 1955))).

Ultimately, the disposition of this motion turns on the principle that the Government is not liable for a taking when it destroys property to prevent the spreading of a fire, which Sr. Judge Futey recently applied in TrinCo Investment Co. v. United States, No. 11-857L, 2012 WL 2878609 (Fed. Cl. July 16, 2012), appeal docketed, No. 12-5139 (Fed. Cir. Sept. 11, 2012). Defendant relies heavily on TrinCo in its reply brief, see Def.'s Br. filed July 27, 2012, at 2-5, and plaintiffs address the case in their sur-reply, see Pls.' Br. filed Aug. 9, 2012, at 1-2.

The factual underpinnings of TrinCo are almost identical to those in the case at bar. In response to wildfires in a national forest, the Forest Service intentionally lit a number of

5

fires proximate to the landowners' private property to reduce fuel, i.e., unburned timber. 2012 WL 2878609, at *1. After the fires then spread to those properties, the landowners claimed a taking of their timber and other property, which were destroyed by the fire. Id. The court undertook a review of Supreme Court of the United States takings jurisprudence, observing that "[t]he recognition that no compensation is due when a government acts to stop a fire from spreading is not new." Id. at *2-3. Examining takings cases involving fires, the court concluded that "[t]he government is not liable for the destruction of property when it acts '[t]o prevent the spreading of a fire.'" Id. at *2-3 (quoting Omnia Commercial Co. v. United States, 261 U.S. 502, 508 (1923)) (second alteration in original). Because the complaint in TrinCo alleged that the Government intentionally had set fires as part of its fire management efforts, the court held that the landowners had failed to state a takings claim. Id. at *4.

This court's independent examination of TrinCo confirms that the Court summarized and applied the law correctly regarding the destruction of private property to prevent the spread of a fire. The court has found no jurisprudence, however, addressing how that principle fits within the Ridge Line framework. Upon consideration, the court concludes that the law regarding destruction of property in the course of firefighting efforts harmonizes most readily with the second prong of Ridge Line. When the Government destroys property to prevent the spread of a fire, it does not appropriate a benefit to itself; any benefit inherent in the property is lost through destruction. Similarly, the Government does not preempt the owner's right of enjoyment because upon destruction, nothing remains to enjoy. To put it glibly, the Forest Service did not burn plaintiffs' timber in order to provide heat for the crew. Thus, government destruction of property to prevent the spread of a fire does not satisfy the second prong of Ridge Line, and does not constitute a taking. In TrinCo the court dismissed the plaintiff's concerns about the natural law origins of the guiding principle regarding destruction of property in the course of firefighting efforts, noting that it had been reiterated in recent Supreme Court opinions. See TrinCo, 2012 WL 2872609, at *3 (citing Lucas v. S.C. Coastal Council, 505 U.S. 1003, 1029 n.16 (1992); Lingle v. Chevron U.S.A. Inc., 544 U.S. 528, 528 (2005)). It is clear that the principle also finds a place within the Ridge Line test. 2/

---

2/ It might also be said that the first prong of Ridge Line prevents a government destruction of property to prevent the spread of a fire from being a taking, as the destruction could be characterized as merely incidental to the authorized activity of firefighting. The court concludes, however, that the doctrine is understood more properly within the context of Ridge Line's second prong.

6

The almost identical nature of the facts in TrinCo and those in the case at bar is compelling. In both cases the Forest Service lit backfires to contain the spread of a wildfire, which resulted in the destruction of timber and other personal property. In both cases the complaint did not establish that the Forest Service's actions were not part of firefighting efforts. Indeed, in the instant case, the complaint affirmatively pleads that the Forest Service acted to prevent the spreading of a fire, see Compl. filed Mar. 20, 2012, ¶¶ 39, 46, 53, 61, 68, 78, and plaintiffs have stated as much in briefing this motion, see Pls.' Br. filed June 21, 2012, at 4 (stating backfire set "in an effort to halt the spread of the wildfire"). Thus, as in TrinCo, the complaint alleges no facts from which the court can conclude that the Forest Service was not acting to prevent the spreading of a fire. Because the Government is not liable for a taking when it destroys real or personal property to prevent the spread of a fire, plaintiffs have failed to state a takings claim.

While TrinCo also came before the court on a dispositive motion under Rule 12(b)(6), Ridge Line was a case tried to the court, and the Federal Circuit has cautioned that even in the context of summary judgment "[t]he fact-intensive nature of just compensation jurisprudence to date . . . argues against precipitous grants of summary judgment." Yuba Goldfields, Inc. v. United States, 723 F.2d 884, 887 (Fed. Cir. 1983); see also Moden v. United States, 404 F.3d 1335, 1342 (Fed. Cir. 2005) (citing id.). But see Hartwig, 485 F.2d 622 (granting, pre-Yuba Goldfields, defendant's motion for summary judgment). Consequently, the court must consider whether a rule of law drawn from Ridge Line should be applied on a motion to dismiss before development of a factual record.

The Federal Circuit in Cary was not troubled that the case was presented on a Rule 12(b)(6) motion to dismiss. See Cary, 552 F.3d at 1374-76 (granting, post-Ridge Line, defendant's motion for judgment on the merits, treated as Rule 12(b)(6) motion). Plaintiffs nonetheless caution that dismissal at this stage would entrench a draconian *per se* rule that immunizes all government firefighting authority to destroy real and personal property. See Pls.' Br. filed June 21, 2012, at 10 n.1; Pls.' Br. filed Aug. 9, 2012, at 2. In urging the propriety of a takings claim in the face of the Government's invocation of immunity from actions taken to stop the spread of wildfires, plaintiffs not unreasonably assert: "[W]hatever authority the Government had to light a backfire to fight the Poe Cabin wildfire, it did not have the authority to light a fire of this magnitude: The Government simply took too much." Pls.' Br. filed June 21, 2012, at 12. 3/ Mindful that bright lines should not insulate government activity from all claims, the court nonetheless concludes that the facts alleged

---

3/ Plaintiffs also assert in their response brief that "the Government lit a backfire that burned almost 60,000 acres . . . ." Pls.' Br. filed June 21, 2012, at 11. It is not clear to the court how plaintiffs arrived at that figure, as it is neither pled in nor can it be calculated from their Complaint. It is also not clear whether the backfire itself is responsible for the burning of 60,000 acres, or if that was the total burned in the Poe Cabin fire.

do not state a claim for a taking. Plaintiffs have not cited, and the court has not found, any authority suggesting that the limits of the Government's authority to destroy personal property to prevent the spread of a fire are found in the magnitude of the destruction. 4/ If the Government was excessive in its destruction of property in the course of firefighting efforts, i.e., "took too much," such concerns sound in tort, not takings law.

Because the Government is not liable for a taking when it destroys real or personal property to prevent the spread of a fire, the destruction of plaintiffs' timber and other personal property due to alleged overburning is in the nature of a tortious injury, not a taking. As a result, plaintiffs have failed to state a takings claim, and dismissal pursuant to RCFC 12(b)(6) is appropriate.

## CONCLUSION

Accordingly, based on the foregoing, defendant's motion to dismiss pursuant to RCFC 12(b)(6) is granted, and the Clerk of the Court shall enter judgment dismissing plaintiffs' complaint for failure to state a claim upon which relief can be granted.

**IT IS SO ORDERED.**

No costs.

/s/ Christine O.C. Miller
_____
**Christine Odell Cook Miller**
Judge

---

4/ Pennsylvania Coal Co. v. Mahon, 260 U.S. 393 (1922), cited by plaintiffs for the proposition that the magnitude of diminution determines the existence of a taking, see Pls.' Br. filed June 21, 2012, at 10, does not support plaintiffs' argument. The "magnitude" referenced in that case was the extent to which a statute extinguished property rights in coal by regulating the ability to mine it, not the quantity of coal so impaired. See 260 U.S. at 412-15.